UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| SAMANTHA JOHNSON STEARNS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No: 1:15-cv-343-HSM-CHS |
| | ) |
| NANCY A. BERRYHILL, Commissioner | ) |
| of Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

I. Introduction

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the Commissioner's final decision denying Samantha Stearns's ("Plaintiff") claim for Disability Insurance Benefits ("DIB"), as provided by the Social Security Act.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72(b) for a report and recommendation on Plaintiff's Motion for Judgment on the Pleadings [Doc. 12] and the Commissioner's Motion for Summary Judgment [Doc. 14].

Finding that the Commissioner's determination that Plaintiff is not disabled under the Act is supported by substantial evidence in the record as required by 42 U.S.C. § 405(g), I **RECOMMEND** that Plaintiff's motion [Doc. 12] be **DENIED**, the Commissioner's motion [Doc. 14] be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

1

II. Background

    A. Procedural History

On August 17, 2011, Plaintiff protectively filed for DIB under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, based on fibromyalgia, pain and stiffness, diabetes, depression, hypertension, lack of concentration, and a history of childhood cancer and chemotherapy.[1] [Tr. 109-110, 123].[2] Plaintiff's claim was denied initially and on reconsideration [Tr. 48-52, 61-63]. On April 8, 2014, Plaintiff appeared and testified at a hearing before Administrative Law Judge ("ALJ") Jeannie Bartlett [Tr. 33-47]. On June 6, 2014, the ALJ issued a decision finding that Plaintiff was "not disabled" as defined in the Act because work existed in the national economy that she could still perform [Tr. 15-26]. On October 19, 2015, the Appeals Council denied Plaintiff's request for review [Tr. 1-4]. Thus, Plaintiff has exhausted her administrative remedies, and the ALJ's decision stands as the Commissioner's final decision subject to judicial review. *See* 42 U.S.C. § 405(g).

    B. Relevant Facts

*Plaintiff's Age, Education, and Past Work Experience*

Plaintiff is currently a 47-year-old individual who performed past relevant work as a babysitter, client specialist for a bank, and administrative assistant [Tr. 34-35, 42-43, 154]. At the time of her alleged onset date of July 31, 2008, Plaintiff was 38 years old [Tr. 109].

---

[1] The Court will focus its review of the record on the impairments that are relevant to Plaintiff's Motion for Judgment on the Pleadings [Doc. 12].

[2] An electronic copy of the administrative record is docketed at Doc. 8.

*Plaintiff's Testimony and Medical History*

The parties and the ALJ have summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters as relevant to the analysis of the parties' arguments.

*The ALJ's Findings*

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since July 31, 2008, the alleged onset date (20 CFR 404.1571, *et seq*.).

3. The claimant has the following severe impairments: Fibromyalgia; degenerative disc disease of the lumbar and cervical spine; history of childhood cancer with a bony abnormality in the right hip, status post reconstructive surgery and radiation treatment; obesity; depression; and post-traumatic stress disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), except requiring only occasional pushing/pulling with the right lower extremity; no crouching, crawling, or climbing of ladders, ropes, or scaffolds, otherwise occasional postural maneuvers; no concentrated exposure to heat/cold, dangerous machinery, or heights; limited to simple, routine, and repetitive job tasks/instructions; only superficial contact with supervisors and co-workers, and no sustained contact with the general public; and a low stress work setting with regard to production demands and a need to adapt to work changes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on November 21, 1969 and was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 31, 2008, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 17-25].

III. Analysis

A. Standard of Review

The determination of disability under the Act is an administrative decision. To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she

4

is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. *Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner made any legal errors in the process of reaching the decision. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (adopting and defining substantial evidence standard in the context of Social Security cases); *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of

choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986).

The court may consider any evidence in the record, regardless of whether the ALJ cited it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). However, for purposes of substantial evidence review, the court may not consider any evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is not obligated to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived,'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

B. Discussion

Plaintiff presents two issues for review: (1) whether the ALJ erred in assessing the opinion of her treating physician, Dr. Eugene Huffstutter; and (2) whether the ALJ erred in evaluating the credibility of her subjective complaints of pain [Doc. 13 at 2].

*Treating Source*

Plaintiff argues that the ALJ erred in failing to give controlling weight to the opinion of treating physician, Dr. Huffstutter, and failing to give good reasons for the weight that she assigned Dr. Huffstutter's opinion [*Id.* at 6-11].

6

Under 20 C.F.R. §§ 404.1502, a "treating source" is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." *Accord Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). An ALJ is required to give a treating source's medical opinion "controlling weight" if: "(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)); *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 696 (6th Cir. 2007).

If the treating source's medical opinion is not entitled to controlling weight, the ALJ must determine the appropriate weight to give the opinion upon consideration of the following factors: "the length, frequency, nature, and extent of the treatment relationship, . . . as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)-(6)). If the ALJ does not give a treating source's opinion controlling weight, he must give "good reasons" that are supported by the evidence in the record and sufficiently specific to permit "meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (internal citations omitted). A failure to give "good reasons," or a failure to determine the degree of deference owed to a non-controlling treating source opinion, "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record" and requires remand. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (per curiam) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d

234, 243 (6th Cir. 2007)). The treating-source rule is not, however, "a procrustean bed, requiring an arbitrary conformity at all times." *Friend*, 375 F. App'x at 551. The ultimate decision of disability rests with the ALJ. *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 992 (6th Cir. 2007).

In this case, the ALJ discussed Plaintiff's treatment history with Dr. Huffstutter in significant detail:

> [Plaintiff] began seeing rheumatologist J. Eugene Huffstutter in August 2008 for treatment of her polyarthritis. Afterward, she was hospitalized with Salmonella, which resolved. . . . [Plaintiff] returned to Dr. Huffstutter in January 2009 reporting continued pain, especially in her hands, feet, and low back. She also complained of sleep disturbance and diffuse aching. On examination, there was definite swelling of her finger joints. She reported pain with movement, however range of motion was essentially normal in all joints. Her strength and sensation were normal, but there were active trigger points across her upper and lower back. Laboratory testing revealed negative ANA. X-rays showed normal hands, arthritis of the sacroiliac joints with evidence of abdominal surgery, and normal feet, except for plantar fasciitis. Dr. Huffstutter changed her diagnosis from reactive arthritis to fibromyalgia. Through July 2009, [Plaintiff's] joints exhibited normal range of motion, despite her reported pain and active trigger points[.]
> ….
>
> After a three-year lapse in treatment, [Plaintiff] returned to Dr. Huffstutter in June 2012 for treatment of her diffuse pain. She reported exercising on a regular basis, doing water exercises and using a treadmill. . . . On examination, there was diffuse tenderness in her joints, limited range of motion in the right hip, and active trigger points across the upper/lower back and legs. Dr. Huffstutter increased her Lyrica.
> ….
>
> On July 20, [2012,] [Plaintiff] reported that her fibromyalgia symptoms were only mild, yet uncontrolled with medication. Her examination revealed no evidence of joint deformity, heat, swelling, erythema, effusion, decrease in range of motion, or motor/sensory deficits; however she did have 18 active trigger points[.]
> ….
>
> On January 15, 2013, [Plaintiff] reported persistent, moderate-severe pain, tenderness, stiffness, throbbing, and aching all over. Her symptoms were aggravated by overuse, weather, and missing Lyrica and Cymbalta. She indicated

8

that her medications relieved her symptoms somewhat. Range of motion, sensation, strength, stability, motor functioning, and gait were normal. . . .

[Tr. 20-22].

In January 2013, Dr. Huffstutter completed a Medical Opinion Form regarding Plaintiff's functional limitations [Tr. 383-385]. Dr. Huffstutter opined that Plaintiff could stand or walk one hour or less at a time and two hours in a workday; sit two hours or less at a time and four hours in a workday; and lift or carry up to ten pounds occasionally, up to twenty pounds infrequently, and never more twenty pounds [Tr. 383]. Dr. Huffstutter further opined that Plaintiff had problems with stamina and endurance which would require her to rest for more than the one thirty-minute and two fifteen-minute breaks normally allowed, but he assigned "no specific requirement" because "her energy level w[ould] fluctuate" [Tr. 384]. He rated Plaintiff's pain as extreme "9/10," stated that she would experience intermittent lapses in concentration or memory, and stated that she would miss one to two work days per month depending on the severity of her symptoms [Tr. 384-385]. Dr. Huffstutter concluded that Plaintiff "has diffuse pain that precludes full-time gainful employment," but assigned Plaintiff "no formal work restrictions because she self-limits activities due to pain." [Tr. 383].

The ALJ assigned Dr. Huffstutter's opinion minimal weight, explaining her decision as follows:

> I give minimal weight to Dr. Huffstutter's opinion as his narrative limitations and checkbox opinions are somewhat inconsistent with each other, and not supported by the objective medical evidence or her reported activities. The evidence shows complaints of pain, yet adequate functional abilities with regard to range of motion, sensation, motor functioning, and balance. At one time, she even described her pain as mild. . . . It also shows improvement in her symptoms with medication (Lyrica). Lastly, [Plaintiff's] activities, including using a treadmill, doing water exercises, and light housework are not consistent with such a restrictive assessment.

9

[Tr. 24].

After reviewing the record, the Court concludes that the ALJ provided good reasons for not giving controlling weight to Dr. Huffstutter's medical opinion. Although the ALJ did not specify whether she found Dr. Huffstutter to be a treating source, the Court concludes that the ALJ appropriately applied the treating source rule. The ALJ's decision shows that she determined that Dr. Huffstutter's opinion was not well supported and was inconsistent with the other evidence of record and, therefore, not entitled to controlling weight. As the ALJ noted, Dr. Huffstutter's opinion is internally inconsistent in that it purports to place "no formal work restrictions" on Plaintiff while, in fact, placing significant restrictions on Plaintiff's ability to work [Tr. 383]. The ALJ also noted that Dr. Huffstutter's opinion was inconsistent with physical examination findings showing normal range of motion, sensation, motor functioning, and balance, and Plaintiff's own reports that, at one point, her symptoms were mild and controlled with medication [Tr. 387-391, 393]. The ALJ also noted that Dr. Huffstutter's opinion was inconsistent with Plaintiff's reported daily activities, as discussed in more detail below. The ALJ went on to analyze the statutory factors in deciding the appropriate weight to give Dr. Huffstutter's opinion. The ALJ addressed the length, frequency, nature, and extent of the treatment relationship; Dr. Huffstutter's specialty as a rheumatologist; and the inconsistency of Dr. Huffstutter's opinion with the other evidence of record. *See Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)-(6)).

Based on the foregoing, the Court finds that the ALJ did not err in concluding that Dr. Huffstutter's opinion was not entitled to controlling weight because it was inconsistent with the medical evidence of record. The Court finds that the ALJ properly weighed the applicable

10

statutory factors when determining that Huffstutter's opinion was entitled to minimal weight. In addition, the Court finds that the ALJ adequately explained the basis for affording minimal weight to the treating physician's opinion and gave good reasons for the decision. Accordingly, the Court concludes that the ALJ did not err in her consideration of Dr. Huffstutter's opinion.

*Pain and Credibility Assessment*

Plaintiff next argues that the ALJ erred in evaluating her subjective complaints of pain [Doc. 13 at 11-14]. Specifically, Plaintiff contends that the ALJ erroneously found her subjective complaints not credible "due solely to her reported daily activities" and that the ALJ "mischaracterize[d]" those activities [*Id.* at 11].

A claimant's statement that she is experiencing disabling pain or other subjective symptoms will not, taken alone, establish that she is disabled. 20 C.F.R. § 404.1529(a). Evaluating subjective complaints such as pain requires a two-step analysis known in this circuit as the *Duncan* test. *See Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). Under the *Duncan* test,

> [f]irst, we examine whether there is objective medical evidence of an underlying medical condition. [Second], [i]f there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Felisky*, 35 F.3d at 1038-39 (quoting *Duncan*, 801 F.2d at 853). Objective medical evidence constitutes medical signs and/or laboratory findings as defined in 20 C.F.R. §§ 404.1528(b)-(c). However, the *Duncan* test "does not require objective evidence of the pain itself." *Felisky*, 35 F.3d at 1039 (internal citation omitted). The Commissioner may examine a number of other factors besides medical signs and laboratory findings to determine the severity of the alleged pain or other

11

subjective symptoms once the underlying impairment is established by objective medical evidence. As the Social Security regulations explain,

> When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work….

20 C.F.R. § 404.1529(c)(1); *see also Felisky*, 35 F.3d at 1037-40.

In addition to the objective medical evidence, the claimant's own statements regarding the severity of her pain will be considered; however, in considering those statements, the claimant's credibility will be evaluated. *See id.* at 1036-37. It is the province of the Commissioner, not the reviewing court, to make credibility findings, but the Commissioner must clearly state her reasons if she finds the claimant to be lacking in credibility. *Id*. at 1036; *see also Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant"). The ALJ's credibility findings "are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).

The SSA provides a checklist of other factors that the ALJ must consider to assess the severity of a claimant's subjective complaints, including the claimant's daily activities; the location, duration, frequency, and intensity of the pain or other symptoms; precipitating and aggravating factors; medication taken to alleviate pain or other symptoms; treatment other than medication received for relief of pain or other symptoms; and any other measures used to relieve the pain or other symptoms (such as lying down or standing for 15 to 20 minutes every hour). 29 C.F.R. §

12

404.1529(c)(3); *see also Felisky*, 35 F.3d at 1037-38 (discussing 29 C.F.R. § 404.1529 pertaining to the evaluation of pain).

Additionally, Social Security Ruling 96-7p[3] emphasizes that credibility determinations must find support in the record and not be based upon the ALJ's "intangible or intuitive notion[s]." 1996 WL 374186 at *4. In assessing the claimant's credibility, the ALJ must consider the record as a whole, including the claimant's complaints, lab findings, information provided by treating physicians, and other relevant evidence. *Id*. at *5. Consistency between the claimant's subjective complaints and the record evidence "tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 863 (6th Cir. 2011). The ALJ must explain her credibility determination such that both the claimant and subsequent reviewers will know the weight given to the claimant's statements and the reason for that weight. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2.

In this case, the ALJ satisfied the first prong of the *Duncan* test when she concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms [Tr. 20]. The second prong of the *Duncan* test consists of two alternatives: whether the objective medical evidence "confirms the severity of the alleged pain arising from the condition" or whether the "objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain."

---

[3] SSR 96-7p has been superseded by SSR 16-3p which eliminates the use of the term "credibility" from SSA policy, because the SSA's regulations do not use this term, and clarifies that subjective symptom evaluation is not an examination of a claimant's character. *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). SSR 16-3p became effective on March 28, 2016 (*see* 2016 WL 1237954), so it is not applicable to the ALJ's decision in this case.

13

After discussing Plaintiff's testimony and the medical evidence of record in significant detail, the ALJ found that:

> While [Plaintiff's] impairments could reasonably cause her symptoms, including pain, fatigue, decreased concentration/memory, grogginess, and depression, her statements regarding the severity, intensity, and disabling effects of these impairments are not fully credible based on my review of the objective medical evidence and her reported daily activities.

[Tr. 22].

Regarding those daily activities, the ALJ explained that:

> [Plaintiff's] reported activities do not support a finding of disability. [Plaintiff] has reported using a treadmill and doing water exercises regularly. . . . During her consultative examination with Mr. Cartwright, [Plaintiff] reported needing some assistance getting in and out of the bathtub and needing to use a chair in the shower. She reported that when she is home by herself she is able to prepare simple meals. She does some housework, including using a self-propelled vacuum cleaner or Swifter, unloads the dishwasher, drives on a very episodic basis, grocery shops at a very small grocery store. [Plaintiff] watches some television and uses the computer sometimes. She has a relatively stable relationship with her husband and a very good relationship with her daughter. She sees her niece and nephew on a frequent basis and regularly attends mass at St. Theresa Catholic Church in Cleveland.

[Tr. 23].

Plaintiff argues that the ALJ failed to properly consider the regulatory factors and discounted the credibility of her subjective complaints of pain based solely on her daily activities [Doc. 13 at 11-14]. However, from the Court's review, the ALJ evaluated Plaintiff's credibility in a manner that was consistent with the agency's regulations and policies.

Plaintiff contends that the ALJ relied too heavily on her activities of daily living, which she believes the ALJ also mischaracterized [Doc. 13 at 11-14]. The Court disagrees. It is entirely appropriate for the ALJ to consider daily activities when assessing credibility. *See* 20 C.F.R. §

14

404.1529. Thus, the ALJ was free to consider Plaintiff's testimony at the administrative hearing that she was able to feed her pets, watch television, and walk on a treadmill for five minutes twice a day [Tr. 20, 39]. The ALJ also noted that Plaintiff had reported to Dr. Huffstutter that she exercised on a regular basis, did water exercises, and used a treadmill [Tr. 21, 404]. Plaintiff contends that she testified at the hearing that she did not perform these activities on a "regular basis" [Doc. 13 at 13]. The Court notes that Plaintiff did indeed testify that she walked on a treadmill twice a day for five minutes, but that she was "not religious about it" [Tr. 39]. She also testified that she had stopped water aerobics because she was unable to afford it [*Id.*]. However, it was the ALJ's role, and not the role of this Court, to weigh the credibility of these statements. To the extent that Plaintiff made inconsistent statements to her doctor and to the ALJ at the hearing, it was within the ALJ's purview to discount Plaintiff's credibility on this basis or to credit one report over another.

The ALJ also considered Plaintiff's other reports of activities that were inconsistent with her subjective complaints of pain [Tr. 23]. For example, the ALJ noted that during Plaintiff's psychological consultative examination, she reported that she was able to prepare simple meals and did some housework, including using a self-propelled vacuum cleaner or Swiffer and unloading the dishwasher [Tr. 23, 334]. Plaintiff reported that she drove on a very episodic basis and shopped at a very small grocery store [Tr. 23, 334]. She also reported watching some television and using a computer occasionally [Tr. 23, 335]. The ALJ reasonably considered that these reported activities undermined Plaintiff's claimed limitations.

Moreover, the ALJ did not rely solely on Plaintiff's daily activities when assessing her credibility. The ALJ also considered the extent to which Plaintiff's allegations of disabling pain

15

were inconsistent with the objective medical evidence [Tr. 19-23]. For example, the ALJ noted that Plaintiff's joints generally had full range of motion and her sensation, strength, grip, balance, and motor functioning were found to be generally normal [Tr. 22, 205-262, 326-331, 387-409]. The ALJ also discussed the extent to which Plaintiff reported improvement in her symptoms with medication on several occasions [Tr. 21-22, 231-279, 387-409]. The ALJ noted that Plaintiff's statements to her doctors regarding medical improvement were inconsistent with her testimony at the administrative hearing [Tr. 20, 22, 38]. The ALJ also observed that Plaintiff had received minimal and conservative treatment for her mental impairment, including that she never sought specialized mental health treatment and refused to take anti-depressant medication [Tr. 23, 333, 412].

As discussed above, the ALJ set forth a detailed analysis evaluating several of the appropriate regulatory factors and concluding that Plaintiff's subjective complaints of pain were not fully credible. The Court concludes that the ALJ properly weighed the evidence in the record and did not err in assessing Plaintiff's credibility. The ALJ's assessment is supported by substantial evidence and complies with *Duncan*, 29 C.F.R. § 404.1529, and SSR 96-7p.

IV. <u>Conclusion</u>

Having carefully reviewed the entire administrative record and the parties' briefs filed in support of their respective motions, I conclude that there is substantial evidence in the record to support the ALJ's findings and the Commissioner's decision, and that neither reversal nor remand is warranted on these facts. With such support, I find that the ALJ's decision must stand, even if the record also contains substantial evidence that would support the opposite conclusion. *See, e.g.*, *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Accordingly, I

**RECOMMEND** that Plaintiff's Motion for Judgment on the Pleadings [Doc. 12] be **DENIED**, the Commissioner's Motion for Summary Judgment [Doc. 14] be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.[4]

                  s\ *Christopher H. Steger*
                  UNITED STATES MAGISTRATE JUDGE

---

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file specific objections within the time specified can constitute a waiver of further appeal of this Report and Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).